**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| STATE OF INDIANA,<br>STATE OF ALASKA,<br>STATE OF FLORIDA,<br>TERRITORY OF GUAM,<br>STATE OF MAINE,<br>STATE OF MARYLAND,<br>COMMONWEALTH OF MASSACHUSETTS,<br>STATE OF NEW HAMPSHIRE,<br>STATE OF NEW MEXICO,<br>STATE OF OREGON,<br>COMMONWEALTH OF PENNSYLVANIA,<br>STATE OF RHODE ISLAND,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br>STATE OF VERMONT,<br>STATE OF WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>EIDP, INC. FORMERLY KNOWN AS E.I. DU PONT DE NEMOURS AND CO.,<br>CORTEVA, INC.,<br>VYLOR, INC.,<br><br>Defendants. | ) | Case No. 1:26-cv-02122-TWP-MG |

**ORDER GRANTING MOTION TO STAY PENDING TRANSFER BY JPML**

This matter is before the Court on a Motion to Stay Proceedings Pending Transfer by the Judicial Panel on Multidistrict Litigation (the "Motion to Stay Pending Transfer") (Filing No. 22) filed by Defendants EIDP, Inc., formerly known as E.I. Du Pont de Nemours and Co. ("DuPont"), Corteva, Inc. ("Corteva"), and Vylor, Inc. ("Vylor") (collectively, "Defendants"). Defendants request a stay of this action pending the Judicial Panel on Multidistrict Litigation's ("JPML") resolution of a motion to transfer this action to multidistrict litigation in the District of South Carolina. For the following reasons, the Motion to Stay Pending Transfer is **granted**.

## I. BACKGROUND

This section is not intended to provide a comprehensive explanation of all the facts in this case; rather this Order provides only the background relevant to the Motion before the Court. The underlying facts of this case are described in detail in the Court's Order Granting Motion for Temporary Restraining Order (Filing No. 76).

Plaintiffs, who are sixteen states and sovereigns (collectively, "Plaintiffs"), allege that DuPont and its parent, Corteva, fraudulently transferred most of their valuable assets, but not their liabilities, to Vylor to evade the billions of dollars in damages that DuPont and Corteva are or will be obligated to pay related to DuPont's historic use and production of per- and polyfluoroalkyl substances ("PFAS"). Vylor was originally incorporated as a subsidiary of Corteva, but on October 1, 2026, once DuPont's singularly valuable asset (its seed business) had been transferred to Vylor, Corteva spun off Vylor into an independent company. This lawsuit followed.

This lawsuit is just one of many filed in the last two decades against Corteva and/or DuPont related to PFAS and products containing PFAS, including aqueous film-forming foam ("AFFF"). Several of the lawsuits, many of which relate to AFFF, have been consolidated into multidistrict litigation in the District of South Carolina. *In re AFFF Prods. Liab. Litig.*, 2:18-mn-02873 (D.S.C.) (the "AFFF MDL"). Each Plaintiff here has a case pending in the AFFF MDL, although many of those cases are not limited to AFFF. Several Plaintiffs also have cases pending against DuPont outside the AFFF MDL (Filing No. 88 at 8).

In mid-September 2026, California moved for leave to file a temporary restraining order ("TRO") and preliminary injunction in the AFFF MDL, seeking to prevent Corteva from spinning off Vylor into an independent company. None of the Plaintiffs here formally joined in California's motion, but several of them filed statements in support. The District of South Carolina originally denied the motion for leave, finding that other venues (Delaware or Indiana) were the appropriate

forum for resolving California's motion.[1] The Fourth Circuit Court of Appeals summarily reversed. Then on September 30, 2026, the District of South Carolina denied California's motion, finding that remedies at law would be available after the spinoff. On October 2, 2026, California appealed the denial of its motion for TRO and preliminary injunction. California also moved to expedite the appeal, requesting oral argument in December.[2] That appeal remains pending.

Plaintiffs initiated this fraudulent transfer action in the Marion Commercial Court on October 1, 2026, hours after the Vylor spinoff was completed. Contemporaneously with their state court Complaint, Plaintiffs moved for a TRO to enjoin the dissipation of Defendants' assets (Filing No. 1-3). The Marion Commercial Court set a hearing on the motion for TRO the morning of October 2, 2026, but that hearing was cancelled because on the evening of October 1, 2026, Defendants removed the action to this Court pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1) (Filing No. 1). Defendants did not mention the state court motion for TRO in their Notice of Removal or file a notice of pending state court motions as required by Local Rule 81-2(e)(1), but Plaintiffs' counsel notified the Court of the pending motion, and the Court quickly set this matter for a status conference (Filing No. 18).

The parties attended a telephonic status conference with the Magistrate Judge on the afternoon of October 2, 2026, during which the Magistrate Judge set Plaintiffs' deadline to refile their motion for TRO, set a briefing schedule, and set oral argument for 9:30 a.m. on October 8, 2026 (Filing No. 19). During the telephonic status conference, Defendants did not mention that they intended to move for a stay of this action pending transfer to the AFFF MDL. Yet the same

[1] Mot. for Leave to File Mot. for TRO and for Preliminary Injunction, Dkt. 11579, *In re: AFFF*, No. 2:18-mn-2873 (D.S.C. Sep. 14, 2026); Order, Dkt. 11627, *In re: AFFF*, No. 2:18-mn-2873 (D.S.C. Sep. 15, 2026).

[2] Order, Dkt. 11748, *In re: AFFF*, No. 2:18-mn-2873 (D.S.C. Sep. 30, 2026); Notice of Appeal, Dkt. 11774, *In re: AFFF*, No. 2:18-mn-2873 (D.S.C. Oct. 2, 2026); Mot. to Expedite Appeal, Dkt. 6, *California ex rel. Bonta v. 3M Co.*, No. 26-2403 (4th Cir. Oct. 7, 2026).

day as the telephonic conference, Defendants filed a Notice of Potential Tag-Along Action with the JPML,[3] asking the JPML to transfer this action to the AFFF MDL, and shortly after the conference, Defendants filed the instant Motion to Stay Pending Transfer (Filing No. 22). Plaintiffs were ordered to respond by October 13, 2026 (Filing No. 31).

On the morning of Thursday, October 8, 2026, the Clerk of the JPML issued a determination that this action "is not appropriate for inclusion in [the AFFF] MDL."[4] DuPont then filed a Motion to Transfer with the JPML and a Motion to Expedite the JPML's resolution of the Motion to Transfer.[5] The JPML denied DuPont's Motion to Expedite but set the Motion to Transfer for consideration at the JPML's December 3, 2026 hearing session.[6]

Also on the morning of October 8, 2026, this Court held a hearing on Plaintiffs' Motion for TRO (Filing No. 75). The next day, the Court issued its Order Granting Motion for TRO (the "TRO Order") (Filing No. 76), enjoining Defendants from initiating dividends, stock buybacks, or other transactions outside the ordinary course of their businesses for fourteen days (Filing No. 77).

On Saturday, October 10, 2026, Defendants filed a Motion to Stay the TRO pending a forthcoming emergency motion for relief on appeal (Filing No. 78). Following very expedited briefing, the Court granted the Motion to Stay the TRO. *Id.* at 3; (Filing No. 79). Defendants filed their Notice of Appeal Saturday evening (Filing No. 80) and filed their combined Emergency Motion for Stay Pending Appeal and Motion to Expedite Briefing with the Seventh Circuit on

---

[3] Notice of Potential Tag-Along Action, Dkt. 4667, *In re: AFFF*, MDL No. 2873 (J.P.M.L. Oct. 2, 2026).

[4] Dkt. 4675 (Text Only Entry), *In re: AFFF*, MDL No. 2873 (J.P.M.L. Oct. 8, 2026).

[5] Def. EIDP, Inc.'s Mot. to Transfer Tag-Along Action, Dkt. 4679, *In re: AFFF*, MDL No. 2873 (J.P.M.L. Oct. 9, 2026); Miscellaneous Motion to Expedite Review, Dkt. 4680, MDL No. 2873 (J.P.M.L. Oct. 9, 2026).

[6] Dkt. 4683 (Text Only Entry), *In re: AFFF*, MDL No. 2873 (Oct. 13, 2026).

October 13, 2026.[7] In their Emergency Motion, Defendants told the Seventh Circuit that they "need to authorize dividends at the October 21-22 Board meetings," and that absent an injunction, they intend to issue a total of $121.5 million in shareholder dividends on October 23, 2026.[8] On October 21, 2026, the Seventh Circuit stayed the TRO entered on October 9, 2026 in favor of the plaintiffs-appellees, pending appeal, and set an expedited briefing schedule ending on December 3, 2026. (Filing No. 104). December 3, 2026 is also the same day as the JPML's hearing session.[9]

The Court now considers whether this entire action should be stayed pending the JPML's ruling on Defendants' Motion to Transfer. (Filing No. 22). Plaintiffs have filed their response in opposition (Filing No. 88), and Defendants have filed their reply (Filing No. 99). The Motion to Stay Pending Transfer is now ripe for the Court's review.

## II. DISCUSSION

This Court has authority to stay this action pursuant to its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts routinely stay proceedings pending resolution by the JPML of a motion that would result in transfer of the case. *See, e.g.*, *Anderson v. Fortra LLC*, No. 23-cv-533, 2024 WL 195648, at *2 (D. Minn. Jan. 18, 2024). However, the pendency of a motion to transfer before the JPML does not automatically entitle a party to a stay of a case as to which transfer is sought.

With respect to a request for a stay pending a decision by the JPML for transfer, the Court considers three factors: "(1) the potential prejudice to the non-moving party; (2) the hardship and

[7] *Indiana v. EIDP, Inc. f/k/a E.I. DuPont de Nemours & Co.*, Dkt. 4, No. 26-3075 (7th Cir. Oct. 13, 2026).

[8] *Id.* at 6, 14.

[9] Order, *Indiana v. EIDP, Inc.*, Dkt. 40, No. 26-3075 (7th Cir. Oct. 13, 2026); Order, *Indiana v. EIDP, Inc.*, Dkt. 41, No. 26-3075 (7th Cir. Oct. 13, 2026)

inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Azar v. Merck & Co.*, No. 06-cv-0579, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (citing *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)); *see also Joyner v. Tyson Foods, Inc.*, No. 07-cv-0141, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) (applying *Rivers* factors).

**1. Potential Prejudice to Plaintiffs**

Defendants first argue that a stay would not prejudice Plaintiffs because the stay will be of a limited duration, during which Plaintiffs will not suffer irreparable harm. In their opening brief, Defendants asserted that the JPML could resolve the Motion to Transfer "in a matter of days," and, as the District of South Carolina held in its September 30, 2026 order, Plaintiffs are not likely to suffer imminent irreparable harm with no adequate remedy at law (Filing No. 22 at 10–12).

However, as Plaintiffs note in response, this Court has held that Plaintiffs stand to suffer imminent irreparable harm if Defendants are not enjoined from dissipating assets, and we now know that the JPML will not resolve the Motion to Transfer until December 2026 at the earliest (Filing No. 88 at 10–12). District courts have denied stays in similar circumstances. *See Terkel v. AT&T Inc.*, Nos. 06 C 2837, 06 C 2680, 2006 WL 1663456, at *3 (N.D. Ill. June 9, 2006) (denying motion to stay pending JPML determination where plaintiffs sought only declaratory and injunctive relief and had moved for a preliminary injunction to prevent disclosure of records).

A stay, then, would prejudice Plaintiffs because it would ultimately delay a preliminary or permanent injunction preventing asset dissipation. However, even if the Court were to deny the Motion to Stay Pending Transfer, the Court likely would not and/or could not issue any such injunctive relief before the Motion to Transfer is resolved because of the pending Seventh Circuit interlocutory appeal of the TRO Order.

This Court acknowledges that the interlocutory appeal of the TRO Order does not divest it of jurisdiction or prevent it from rendering a final decision. *See* 16 Wright & Miller, Federal Practice & Procedure § 3921.2 (3d ed.) (collecting cases); Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order . . . that grants. . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."); *qad. Inc. v. ALN Assocs., Inc.*, 974 F.2d 834, 837 (7th Cir. 1992) (finding district court's dissolution of injunction while injunction was on appeal was issued "on solid legal ground"). *cf. United States v. City of Chicago*, 534 F.2d 708, 711 (7th Cir. 1976) ("[A]n order granting or denying an interlocutory or preliminary injunction is merged in a decree or order granting or denying the permanent injunction, and that when both orders are appealed from, the appeal from the former will be dismissed"). "Even so, the weight of practice and respect for both judicial efficacy and higher authorities dictate that district courts should use such power only in a manner that preserves the status quo and thus the integrity of the appeal." *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 881 (N.D. Ill. 2018), *withdrawn in part on other grounds*, 513 F. Supp. 3d 828 (N.D. Ill. 2021) (citing *Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014) (noting that modification of an order up on interlocutory appeal is "at best wasteful of resources and at worst chaotic").

Because the Seventh Circuit has decided to stay the TRO Order pending appeal, an intervening order granting a preliminary injunction would not preserve the integrity of the interlocutory appeal and would likely only create duplicative work for the parties and the Seventh Circuit. And to the extent a final judgment and permanent injunction would not unduly interfere with the interlocutory appeal, there is no likelihood that this new, complex action could reach final judgment before the JPML rules on the Motion to Transfer. Accordingly, this Court would decline

to (or be unable to) enter any injunctive relief in Plaintiffs' favor until the interlocutory appeal of the TRO Order is resolved, which, given the Seventh Circuit's briefing schedule, is likely to occur after or around the same time the JPML resolves the Motion to Transfer. *See Thang v. T-Mobile US, Inc.*, No. 21-cv-06473, 2021 U.S. Dist. LEXIS 209531, at *2 (N.D. Cal. Oct. 29, 2021) ("[T]he JPML frequently adjudicates motions to transfer only days after oral argument . . . ."). So, a stay pending a ruling on the Motion to Transfer, as opposed to the unavailability of injunctive relief pending interlocutory appeal of the TRO, is not likely to prejudice Plaintiffs.

This factor thus weighs in favor of a stay.

**2. Hardship to Defendants**

Defendants next argue that they would be prejudiced by the denial of a stay because they would be forced to simultaneously defend against this action and the claims in the AFFF MDL, which would result in duplicative discovery and motions practice, the need to "coordinat[e] defense strategies across multiple forums," and the risk of inconsistent judgments (Filing No. 22 at 12–13). Plaintiffs respond that this action is distinct from the AFFF MDL because this action is the only one in which Vylor is a defendant and the only one asserting claims for fraudulent transfer (Filing No. 88 at 15–16). Plaintiffs also argue that the success on their underlying claims in the AFFF MDL are irrelevant to the instant fraudulent transfer claims, and to be sure, some of the instant Plaintiffs' claims against DuPont are not even in the AFFF MDL. *Id.* Plaintiffs lastly argue that Defendants have failed to show any genuine hardship resulting from the absence of a stay, as they did not mention a stay during the October 2, 2026 telephonic status conference and have not requested expedited review of the Motion to Stay Pending Transfer. *Id.* at 17. On reply, Defendants analogize this case to the AFFF MDL by noting that although Vylor is not a party, California is challenging the Vylor spinoff. Defendants also again raise the risk of duplicative litigation and the risk of inconsistent judgments (Filing No. 99 at 12–13).

The Court agrees with Plaintiffs that the material facts and issues of the AFFF MDL do not overlap with this case as much as Defendants suggest. While Defendants' actual and potential PFAS liabilities may be relevant to the issues of insolvency, intent, and other "badges of fraud" for fraudulent transfer, this Court need not resolve the issue of Defendants' actual liabilities to resolve Plaintiffs' fraudulent transfer claims. Likewise, the Court need not decide whether Defendants' corporate reorganizations in 2015 and 2019 constituted fraudulent transfers in order to determine whether the 2025–2026 Vylor spinoff constituted fraudulent transfer.

The Court also finds that the denial of a brief stay would not increase Defendants' litigation burdens as much as they fear it will. DuPont and Corteva are currently defending against several other PFAS lawsuits filed by some of the instant Plaintiffs outside AFFF MDL, so a stay in this case would only nominally reduce Defendants' litigation burdens. *See Terkel*, 2006 WL 1663456, at *2 (explaining that because defendants did not move to stay another similar action pending transfer, "the defendants . . . appear to be willing to have more than one judge decide the allegedly common or overlapping issues," which "strongly suggests that the goal of economy does not favor transfer to the extent argued by the defendants"). The hardship and inequity to Defendants is minimal if the action is not stayed. This factor therefore weighs against a stay.

**3. Conservation of Judicial Resources**

Defendants lastly argue that a stay would conserve judicial resources and promote efficiency. Defendants reiterate their argument that there is a substantial overlap of issues between this case and the AFFF MDL, and that this Court should not expend its "scarce judicial resources on pretrial matters that may ultimately be superseded by orders entered in the MDL." (Filing No. 22 at 7–9, 14). On response, Plaintiffs note that the pending Motion to Transfer does not deprive this Court of jurisdiction, that this Court has already spent considerable resources reviewing Plaintiffs' fraudulent transfer claims at the TRO stage, and that any judicial resources expended on

pretrial matters would not be wasted because "preliminary relief will follow through . . . transfers." (Filing No. 88 at 17). In their reply, Defendants emphasize that it would be wasteful to permit parallel challenges to the Vylor spinoff by California in the AFFF MDL and by Plaintiffs in this case, and to have the Court resolve PFAS liability issues that the District of South Carolina might later resolved differently (Filing No. 99 at 7–8).

The conservation of judicial resources favors a stay. For the reasons explained above, the Court would decline to enter a preliminary injunction while the TRO appeal remains pending. The only other judicial resources that might foreseeably be expended before the JPML renders its decision would be expended in managing discovery. Given the scope and complexity of this case, the number of parties, and the parties' divergent positions, discovery will likely be extensive and may be fraught with disputes. The Court does not believe that managing discovery would be an effective use of judicial resources over the next few weeks. This factor therefore weighs in favor of a stay.

The Court finds that because of the current posture of this case, a stay pending the JPML's ruling on the Motion to Transfer would not prejudice Plaintiffs. And although hardship and inequity to Defendants is minimal if the action is not stayed, a stay will conserve judicial resources and promote efficiency. After balancing the appropriate factors, the Court finds that Defendants' request for a stay pending the JPML's ruling on the Motion to Transfer is appropriate.

## III. CONCLUSION

For the reasons explained above, Defendants' Motion to Stay Proceedings Pending Transfer by the Judicial Panel on Multidistrict Litigation (Filing No. 22) is **GRANTED**. This action is **STAYED** until the Judicial Panel on Multidistrict Litigation issues its final decision on whether to transfer this case to the AFFF MDL. The parties are **DIRECTED** to notify the Court within **three (3) days** of when the Motion to Transfer is resolved.

**SO ORDERED.**

Date: 10/22/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy Edward Allen
Office of the Attorney General
timothy.allen@atg.wa.gov

Christopher G Aslin
NH Department of Justice
christopher.g.aslin@doj.nh.gov

Scott Leroy Barnhart
INDIANA ATTORNEY GENERAL
scott.barnhart@atg.in.gov

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
tbetz@taftlaw.com

Mark Bower
Office of the Maine Attorney General
mark.bower@maine.gov

Matthew Fitzgerald Chakmakian
Kelley Drye & Warren LLP
mchakmakian@kelleydrye.com

Betsy M. DeNardi
INDIANA ATTORNEY GENERAL
betsy.denardi@atg.in.gov

Levi Downing
Kelley Drye & Warren LLP
ldowning@kelleydrye.com

Wes Earnhardt
Cravath, Swaine & Moore LLP
wearnhardt@cravath.com

Joseph Gregory Eaton
BARNES & THORNBURG, LLP (Indianapolis)
joe.eaton@btlaw.com

Caitlyn Fields
Barnes & Thornburg LLP
caitlyn.fields@btlaw.com

Amanda Jane Gallagher
Barnes & Thornburg LLP
Amanda.Gallagher@btlaw.com

John Dalston Smith Gilmour
Kelley Drye & Warren, LLP
jgilmour@kelleydrye.com

Daniel J. Heintz
Cravath, Swaine & Moore LLP
375 Ninth Avenue
New York, NY 10001

Catherine Hobson
Office of the Attorney General of Texas
katie.hobson@oag.texas.gov

William James Jackson
Kelley Drye & Warren LLP
bjackson@kelleydrye.com

Cheryl P Jacobs
PA-Oag
cjacobs@attorneygeneral.gov

Elizabeth Norris Krasnow
Kelley Drye & Warren LLP
ekrasnow@kelleydrye.com

Zoe Peer Makoul
Kelley Drye & Warren LLP
zmakoul@kelleydrye.com

Jacob Edward Marx
Office of the Attorney General of Texas
jake.marx@oag.texas.gov

Kristina Mentone
Cravath, Swaine & Moore LLP
kmentone@cravath.com

Laura B. Murphy
Vermont Attorney General's Office
laura.murphy@vermont.gov

William E. Padgett
BARNES & THORNBURG, LLP (Indianapolis)
william.padgett@btlaw.com

Michael T. Reynolds
Cravath, Swaine & Moore LLP
mreynolds@cravath.com

Owen van Ogtrop Robinson
Cravath, Swaine & Moore LLP
375 Ninth Avenue
New York, NY 10001

Lana Rowenko
Kelley Drye & Warren, LLP
lrowenko@kelleydrye.com

Lauren Elizabeth Schadt
Kelley Drye & Warren LLP
LSchadt@KelleyDrye.com

Chun Ling Junine So
Washington State Attorney General's Office
Junine.So@atg.wa.gov

Joseph Mitchell Tanner
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mtanner@taftlaw.com

Ming-Toy Taylor
Cravath, Swaine & Moore LLP
mtaylor@cravath.com

Daniel Mikhail Thompson
Barnes & Thornburg LLP
daniel.thompson@btlaw.com

Cory Christian Voight
INDIANA ATTORNEY GENERAL
cory.voight@atg.in.gov

Mary Alison Wessling
Attorney General's Office/ Antitrust
mary.wessling@myfloridalegal.com

Brittany Erin Wright
Office of the Attorney General of Texas
brittany.wright@oag.texas.gov

David I. Zalman
Kelley Drye & Warren, LLP
dzalman@kelleydrye.com